IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 7:20-CV-00139-M

| | | |
|---|---|---|
| WORKINGFILMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| WORKING NARRATIVES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the court is Defendant's Motion for Judgment on the Pleadings [DE 15]. Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(c) for the Plaintiff's purported failure to allege timely claims. For the reasons that follow, the motion is denied.

## I.    Statement of Facts

The following are factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative Complaint (DE 1), which the court accepts as true pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff is a North Carolina non-profit corporation based in Wilmington, North Carolina since 2000, whose mission is to use documentaries to advance social justice and environmental protection. Compl. at ¶¶ 7, 8, 13. Plaintiff fulfills its mission primarily through the curation and touring of short documentary films; Plaintiff also provides consulting, funding and technical support to documentary filmmakers and shares its methodology and best practices through training and presentations with the nonprofit, philanthropic, and documentary film sectors, including

filmmaker, nonprofit, and foundation grantee cohorts. *Id.* at ¶¶ 14-17.

Plaintiff has used the mark "Working Films" (the "Mark") to promote and distribute its services in interstate commerce—including using the Mark on its social media sites (Instagram, Twitter, and Facebook), written communications, promotional materials, and its website—over the last twenty years. Compl. at ¶¶ 10-12, 29, 35-38. Plaintiff applied for and procured Trademark Registration No. 57311102 from the United States Patent and Trademark Office (USPTO) on April 23, 2019 in International Class 36 for "Providing grants for film and video production" and in International Class 41 for "Planning, management, and coordination of film and video screenings; consulting, strategic planning, workshops, and educational training in the field of film and video production; providing a website featuring information on the production and use of non-fiction films, and non-downloadable publications in the nature of blogs, and articles involving social justice and environmental protection." *Id.* at ¶ 32; *see also* Trademark Registration, DE 1-1. The Registration shows that Plaintiff's first use in commerce of the Mark was September 14, 2000. DE 1-1 at 2.

Defendant is a non-profit corporation also based in Wilmington, North Carolina. Compl. at ¶¶ 18-19. According to its website at www.workingnarratives.org, Defendant "consults with foundations and nonprofits to help (1) develop a story-based communications strategy; (2) create and manage web platforms for social-change groups or movement; and (3) provide movements and grantee cohorts with ongoing 'narrative strategy' support." *Id.* at ¶ 26. Initially, Defendant used several marks to promote its services (including "Nation Inside" as the entity's name), then began using the mark "Working Narratives" (alleged by Plaintiff as the "Infringing Mark") more consistently. *Id.* at ¶¶ 21, 48. Defendant's use of the Infringing Mark, at first, did not overlap in a substantial way with Plaintiff's. *Id.* at ¶ 49. However, Defendant's conduct materially changed,

and Defendant is now consistently using the alleged Infringing Mark to provide services that are substantially similar to those provided by Plaintiff. *Id.* at ¶¶ 50-51.

For example, in 2020, more than one year after Plaintiff's announcement that it would be working on and touring short documentary films on the topic of hurricane recovery, Defendant announced that it had created and would tour a collection of short form documentary films focused on hurricane recovery. Compl. at ¶¶ 15, 28. In so doing, Defendant used a "request a screening" form that was strikingly similar to that used by Plaintiff in numerous projects. *Id.* at ¶ 28.

In addition, Defendant's use of the alleged Infringing Mark has caused the following instances of confusion in the marketplace: (1) at events attended by both Plaintiff and Defendant, other attendees assumed that Working Films was the same organization as Working Narratives or that the two organizations were otherwise affiliated or connected; (2) a consultant of one of Plaintiff's funders confused Plaintiff and Defendant, despite Plaintiff's personnel's direct interview with the consultant; (3) a project collaborator confused Plaintiff and Defendant when writing about the collaboration; (4) a foundation that has provided funding to Plaintiff and, possibly, to Defendant, confused Plaintiff and Defendant; and (5) other third parties engaging with Plaintiff have believed they were engaging with Defendant or that Working Films and Working Narratives were otherwise affiliated or connected. Compl. at ¶¶ 54-59.

After encountering these instances of confusion, Plaintiff attempted unsuccessfully to effectuate Defendant's cessation of use of the Infringing Mark and to reach an amicable resolution of this dispute. Compl. at ¶¶ 60-62. Defendant continues to use the alleged Infringing Mark to identify and promote its goods and services. *Id.* at ¶ 63.

## II. Procedural History

Based on these allegations, Plaintiff seeks permanent injunctive relief for Defendant's

3

alleged trademark infringement in violation of 15 U.S.C. § 1114(1)(a) (first claim for relief); false designation of origin in violation of 15 U.S.C. § 1125(a) (second claim); trademark infringement and unfair competition in violation of North Carolina's common law (third claim); and unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (fourth claim). Compl., ECF 1. Defendant argues that the operative Complaint should be dismissed because Plaintiff's claims are barred by the applicable four-year statute of limitations and the doctrine of laches.

Plaintiff counters that (1) its allegations demonstrate the alleged infringement is a "continuing wrong"; (2) courts sparingly apply the laches doctrine and the Plaintiff's allegations do not reflect "unreasonable delay"; (3) Plaintiff plausibly alleges Defendant progressively encroached on its Mark and, thus, did not delay in bringing suit until "the likelihood of confusion . . . present[ed] a significant danger" to the Mark; (4) Plaintiff's allegations of "willfulness" may give rise to unclean hands, which is a defense to laches; (5) the court should not consider Defendant's exhibits attached to the Answer and Counterclaims, because they are not central to Plaintiff's claims; and (6) Defendant's arguments contain factual disputes which may not be adjudicated under Rule 12(c).

Defendant replies that its exhibits are, indeed, central to Plaintiff's allegations and are properly considered, Plaintiff allegations do not demonstrate progressive encroachment as it is described by the Fourth Circuit, and courts in this district "regularly" apply the doctrine of laches to bar claims for injunctive relief.

## III.     Legal Standards

Motions brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure are governed by the same standard as motions brought under Rule 12(b)(6). *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.

4

1999)). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678– 79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

"A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751 (4th Cir. 2012)). In adjudicating Defendant's motion, the court may consider the complaint, answer, matters of public record, and any exhibits that are "integral to the complaint and authentic" without converting the motion to a motion for summary judgment. *Massey*, 759 F.3d at 347; *see also Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

As noted, Defendant seeks judgment on the pleadings by raising the defenses of laches and statute of limitations to Plaintiff's claims. The laches doctrine and statute of limitations are *affirmative* defenses. *Powell v. Bank of Am., N.A.*, 842 F. Supp. 2d 966, 978 (S.D.W. Va. 2012) (citing Fed. R. Civ. P. 8(c)). "As such, these defenses often are not appropriate for disposition under Rule 12(b)(6)." *Id.*; *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (finding that a Rule 12(b)(6) challenge, "which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."). An exception exists for the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint . . . ." *Powell*, 842 F. Supp. 2d at 978 (quoting *Goodman*, 494 F.3d at 464). The exception is strictly construed, requiring that all "facts necessary to the affirmative defense 'clearly appear [ ] on the face of the complaint.'" *Id.*

IV.    **Analysis**

The Fourth Circuit has recently clarified that claims under the Lanham Act are not controlled by any statute of limitations; rather, claims alleging trademark infringement pursuant to

6

15 U.S.C. § 1114(1) and those alleging section 43(a) violation(s) pursuant to 15 U.S.C.A. § 1125 are subject to the doctrines of laches and acquiescence. *See Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 293, 294 n.7 (4th Cir. 2021) (finding laches, rather than a statute of limitations, provides a satisfactory vehicle for enforcement of section 43(a) claims and noting as precedential its prior decision concluding the same for infringement claims) (citing *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tx.*, 357 F.3d 441, 449 (4th Cir. 2004)).[1]

In North Carolina, however, certain state law claims are subject to statutes of limitation. For example, claims alleging violation(s) of N.C. Gen. Stat. § 75–1.1 must be raised within four years of the date the cause of action accrued. *Jackson v. Minnesota Life Ins. Co.*, 275 F. Supp. 3d 712, 727 (E.D.N.C. 2017) (citing N.C. Gen. Stat. § 75–16.2). The parties do not cite, and the court has not found, case law regarding any time limitations on a common law claim for trademark infringement and unfair competition, but neither party disputes the application of the four-year limitation to such claim. Therefore, for purposes of this motion, the court will apply the four-year limitation in evaluating the common law claim.[2]

Accordingly, the court will first address whether Plaintiff's first and second claims, as

---

[1] The *Belmora* court noted the opinion in *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011), on which Defendant relies, stating that *PBM Prods.'* finding that a set of section 43(a) claims were "barred per se by the analogous state statute of limitations" "directly conflicts with a prior precedential decision of this Court, which acknowledged that Lanham Act claims are not controlled by any statute of limitations." *Belmora LLC*, 987 F.3d at 294 n.7 (citing *What-a-Burger of Va.*, 357 F.3d at 449). The court determined that "without any other means of reconciling" *PBM Prods.* and *What-a-Burger*, the court is "bound to apply the principles correctly espoused in *What-a-Burger.*" *Id.*

[2] North Carolina's statutes of limitation for common law matters are set forth in N.C. Gen. Stat. §§ 1-48 through 1-54; none of these provisions mentions a claim for infringement or unfair competition. If it were necessary, the court would find the statute most analogous to the Plaintiff's common law claim would be the three-year limitation in § 1-52, which limits the time period in which to bring claims for fraud and personal injury. However, because the parties assume that a four-year limitation applies to both the statutory and common law claims in this case, and the court finds Plaintiff's common law claim is most analogous to a claim brought under § 75-1.1, the court will likewise assume that a four-year statute of limitations applies to the common law claim.

alleged in the operative pleading and on which Plaintiff relies for this court's subject-matter jurisdiction, are barred by the doctrines of laches and acquiescence; second, the court will determine whether Plaintiff's third and fourth claims as alleged are barred by the applicable statute of limitations.

A.    Lanham Act Claims

In the trademark context, "courts may apply the doctrine of estoppel by laches to deny relief to a plaintiff who, though having knowledge of an infringement, has, to the detriment of the defendant, unreasonably delayed in seeking redress." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 438 (4th Cir. 2011) (quoting *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996)). While § 1114(1) and § 1125 claims are not governed by statutes of limitation, the Fourth Circuit confirms that such statutes "will continue to play an important role in the district court's laches analysis," because "[l]aches is presumed to bar [Lanham Act] claims filed outside the analogous limitations period"; however, "whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case." *Belmora*, 987 F.3d at 294-95 (citations omitted). The court instructs that, if a district court concludes the presumption applies, it should then consider the following factors to determine whether the plaintiff can overcome the presumption: (1) whether plaintiff knew of defendant's adverse use of the subject mark, (2) whether plaintiff's delay in challenging that use "was inexcusable or unreasonable," and (3) whether defendant "has been unduly prejudiced" by plaintiff's delay. *Id.* at 295.

For its first claim, Plaintiff alleges that it owns and holds a current, valid, and protectible federal registration for the Mark "Working Films" with the United States Patent and Trade Office ("USPTO") under U.S. Reg. No. 5,731,102, and Defendant is willfully using in commerce a

8

reproduction, copy, or colorable imitation of Plaintiff's registered Mark—*i.e.*, "Working Narratives"—with knowledge of Plaintiff's rights in the Mark and knowing that such use is likely to cause and has caused actual confusion, and to cause mistake or to deceive as to the source, affiliation, connection, or association of Defendant's services with the services of Plaintiff. Compl. at ¶¶ 65-70. For its second claim, Plaintiff alleges Defendant is willfully using in commerce, without Plaintiff's consent, a name and false designation of origin that Defendant knows will likely cause and has caused confusion, to cause mistake or to deceive as to Defendant's affiliation with Plaintiff and as to the origin, sponsorship, or approval of Defendant's services. *Id.* at ¶¶ 77-85. Plaintiff contends that, without injunctive relief, it will continue to suffer harm, "including loss of business that Plaintiff otherwise would have earned, and its reputation with funders and the relevant public." *Id.* at ¶ 86.

Specifically, Plaintiff alleges (1) Defendant "knew of Working Films' use of [its] Mark from at least 2007 and prior to Defendant's adoption of the Infringing Mark"; (2) Defendant is "now using ['Working Narratives'] to promote substantially similar services to the same class of consumers from the same location using the same types of funding sources"; (3) Defendant's use of "Working Narratives" was "initially sporadic and inconsistent," with Defendant "using several marks to promote its services"; for example, a funding proposal prepared for a proposed collaboration with Plaintiff referenced "Nation Inside" as Defendant's name; (4) Defendant's services using "Working Narratives" "initially did not overlap in a substantial way with those of Plaintiff," but Defendant's use "has materially changed"; (5) Defendant is "now consistently" using "Working Narratives" to "provide services that are substantially similar to those provided by Plaintiff"; (6) Plaintiff has encountered "instances of actual confusion" including, (a) "at events attended by both Plaintiff and Defendant, other attendees have assumed that Working Films was

9

the same organization as Working Narratives or that the two organizations were otherwise affiliated or connected"; (b) a consultant of one of Plaintiff's funders "confused Plaintiff and Defendant, despite Working Films' personnel interviewing directly with the consultant"; (c) a "project collaborator confused Plaintiff and Defendant when writing about the collaboration" (d) a "foundation that has provided funding to Plaintiff and, upon information and belief, has also provided funding to Defendant, confused Plaintiff and Defendant"; and (e) "[o]ther third parties engaging with Plaintiff have believed they were engaging with Defendant or that Working Films and Working Narratives were otherwise affiliated or connected." Compl. at ¶¶ 45-59.

Defendant responded to the Complaint with an Answer, Defenses, and Counterclaims, in which Defendant seeks a declaration that it has not infringed Plaintiff's Mark and requests an award of damages for Plaintiff's alleged violations of N.C. Stat. Gen. § 75-1.1 and the common law prohibiting unfair competition. Answer, DE 13. Defendant attached to the Answer forty-five exhibits supporting its counterclaims against Plaintiff. *See* DE 13-2 through DE 13-26. Citing to these exhibits, Defendant asserts that Plaintiff has known of Defendant's use of "Working Narratives" since 2013 and did nothing to challenge such use until 2020; Defendant argues that Plaintiff's inaction constitutes "unreasonable delay," which bars Plaintiff's Lanham Act claims.

First, in determining whether there exists a presumption that laches bars Plaintiff's claims, the court finds that the facts necessary to support the affirmative defense, including that Plaintiff's claims fall outside the four-year statute of limitations, do not "clearly appear on the face of the complaint.'" *Powell*, 842 F. Supp. 2d at 978. Defendant does not seem to dispute this, but argues that "the pleadings," including its Counterclaims (and attached exhibits) and Plaintiff's Reply, reflect the facts necessary to show that Plaintiff unreasonably delayed filing the present action. Plaintiff counters that the court may not consider the exhibits attached to Defendant's

Counterclaims because they are neither integral to nor incorporated into the Complaint and any such consideration would deprive Plaintiff of the opportunity to "present evidence and be heard on a more complete record." Defendant contends that the documents are, in fact, central to Plaintiff's claims and that, even if they are not, the court may consider Plaintiff's "admissions" in its Reply to Counterclaims.

### 1. Consideration of Defendant's Exhibits

At the outset, the court notes it is not persuaded by Defendant's argument that, simply because documents are attached to a pleading—here, to Defendant's Counterclaims—the substance of the documents may be considered in analyzing a Rule 12(c) motion seeking dismissal of the Plaintiff's Complaint. Proceeding in this manner would deprive the Plaintiff of preparing and presenting its own evidence and would contravene Rule 12(d) of the Federal Rules of Civil Procedure. Rather, cases in the Fourth Circuit reflect that documents attached to an answer and counterclaims are considered under Rule 12(c) only if the counterclaims are challenged or if the documents are attached and/or "integral" to the complaint. *See, e.g., Williams v. Unum Grp. (Corp.)*, No. 3:17-CV-01814-CMC, 2017 WL 10756823, at *1 (D.S.C. Oct. 18, 2017) (court considered "Covenants [ ] included in documents filed as attachments to both [the] Amended Complaint and [the] Answer and Counterclaims"); *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 593 (D. Md. 2018) (where parties filed cross motions for judgment on the pleadings, the court considered only those documents that were "incorporated" into the complaint and counterclaims and determined not to consider documents proffered merely as "evidence").[3]

---

[3] Defendant cites to three cases for support of its position that documents attached to an answer and counterclaims may be considered in analyzing a Rule 12(c) motion seeking dismissal of a complaint. Reply at 3. The court finds these cases unpersuasive and/or distinguishable from the instant action as follows: *May v. Horton*, No. 5:09-CT-3081-BO, 2010 WL 2990198, at *2 (E.D.N.C. July 29, 2010), *aff'd*, 403 F. App'x 850 (4th Cir. 2010) (the court considered an Offense and Disciplinary Report attached to two defendants' answers in analyzing both Rule 12(b)(6) and

Case 7:20-cv-00139-M   Document 28   Filed 03/29/21   Page 11 of 23

The Fourth Circuit makes clear that, to avoid converting a Rule 12(c) motion to a Rule 56 motion, a district court may consider documents "submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as the document[s] [were] integral to the complaint and there is no dispute about the document[s'] authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Jones v. Penn Nat. Ins. Co.*, 835 F. Supp. 2d 89, 94 (W.D.N.C. 2011) (". . . the purpose of limiting a motion for judgment on the pleadings to the contents of the pleadings, *per se*, is to prevent a court from basing decisions on factual allegations made in one party's documents that the other has not had an opportunity to address."). No party disputes that the Defendant's exhibits were neither attached to nor expressly incorporated in the Complaint; additionally, the Plaintiff does not contest the documents' authenticity. Thus, the court must determine whether the documents are central (or "integral") to Plaintiff's claims.

A document that is quoted or referenced in a complaint is not integral to a plaintiff's claims if the claims do not turn on, nor are based on, information contained in the document. *Goines*, 822 F.3d at 166 (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.") and *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a document is "integral to the complaint" "where the complaint relies heavily upon its terms and effect")). "When the plaintiff attaches or incorporates

_____

12(c) motions but did not explain how or whether the report was incorporated into the complaint by reference); *Williams v. Branker*, No. 5:09-CT-3139-D, 2011 WL 649845, at *3 (E.D.N.C. Feb. 10, 2011), *aff'd*, 462 F. App'x 348, 352 (4th Cir. 2012) (the Fourth Circuit found the court erred in relying on documents attached to the answer—"we are troubled by the district court's reliance on reports from Williams's inmate file handpicked by the defendants, because the complaint is not dependent on such reports"—but found such error harmless where dismissal was proper based solely on consideration of the complaint's allegations); *Jordan v. Caromont Health, Inc.*, No. 3:12CV798-GCM, 2013 WL 443777, at *3 (W.D.N.C. Feb. 5, 2013) (court considered documents attached to the answer in analyzing a Rule 12(c) motion but did not explain how or whether the documents were incorporated into the complaint by reference).

a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* at 167.

Defendant asserts that Exhibits 7 through 45[4] are, in fact, central to Plaintiff Complaint as follows: Exhibits 7 through 21 "detail the parties' knowledge and relationship" as set forth in the Complaint at paragraphs 41 through 44; Exhibits 22 through 27 "detail the correspondence between the parties" as described in paragraphs 60 through 63 of the Complaint; and Exhibits 28 through 45 are "Plaintiff's detailed filings with the USPTO" as described in paragraphs 29 through 40 of the Complaint.

First, paragraphs 41 through 44 of the Complaint allege as follows:

41.    Upon information and belief, the co-founder and Executive Director of Defendant is Nick Szuberla ("Szuberla").

42.    In February 2007, Kentucky-based Appalshop, Inc., hired Working Films to develop and facilitate a strategy for Szuberla's project "Thousand Kites."

43.    Upon information and belief, in 2007, Szuberla was either an employee, a contractor, or otherwise associated with Appalshop, Inc. ("Appalshop").

44.    Upon information and belief, it was from his work with Working Films through Appalshop that Szuberla learned of the work and mission of Working Films, including its use of the Mark.

Compl., DE 1. Exhibits 7 through 17 are notes and emails between Szuberla and persons at Working Films in 2013 and 2014 regarding a possible collaboration; Exhibit 18 is a 2014 Tax Form 990 for Working Films; Exhibit 19 is a 2012 email and attached "toolkit" sent to Szuberla from the Center for Media Justice; Exhibit 20 is a receipt for a workshop held October 3, 2013;

---

[4] Exhibits 1 and 2 appear to be matters of public record for which the court may take judicial notice, and which may be considered for whatever relevancy they have to the matters at issue. *See Greene v. Mullis*, 829 F. App'x 604, 605 (4th Cir. 2020). Exhibits 3 through 6 are simply proffered as evidence and, thus, the court will not consider them. See *Kantsevoy*, 301 F. Supp. 3d at 593.

13

and Exhibit 21 is a 2015 email exchange between Szuberla and Betty Wu. The court finds none of these documents is integral to Plaintiff's allegations regarding whether Szuberla was associated with Appalshop and whether he first learned of Working Films in 2007; therefore, they will not be considered.

Second, paragraphs 60 through 63 of the Complaint allege:

60. As instances of actual confusion occurred, Plaintiff took several actions.

61. Plaintiff demanded several times that Defendant cease use of the Infringing Mark.

62. Plaintiff made numerous efforts to engage Defendant in conversations to reach an amicable resolution and to stop the actual confusion. However, despite these efforts and some communication between the parties, Defendant has not been willing to commit to a meeting to resolve the matter.

63. Despite Plaintiff's demands and efforts to reach a resolution, Defendant continues to use the Infringing Mark to identify and promote its goods and services.

Compl., DE 1. Exhibit 22 is a February 23, 2018 cease and desist letter from an attorney representing Working Films to Szuberla at Working Narratives; Exhibit 23 is a March 16, 2018 letter from an attorney for Working Narratives responding to the February 23, 2018 letter; Exhibit 24 is a May 1, 2019 letter from Working Films' attorney to Working Narratives' attorney seeking a meeting to discuss the trademark dispute; Exhibit 25 is an email from Working Films' chairman of the board to Szuberla seeking a meeting to discuss the trademark dispute; Exhibit 26 is an email exchange between the Working Films' chairman and a Working Narratives' board member regarding a meeting to discuss the trademark dispute; and Exhibit 27 is an email exchange between the parties' board members attempting to schedule a meeting in February and April 2020. To the extent that Plaintiff's claims turn on, or are based on, information contained in these documents and the documents are relevant to the matters at issue, the court may consider them.

Finally, paragraphs 29 through 40 of the Complaint allege:

14

29.     Since at least 2000, Plaintiff has used the Mark consistently and prominently in interstate commerce.

30.     On February 9, 2018, Plaintiff filed an application for a federal trademark registration for the Mark (the "Application").

31.     The United States Patent and Trademark Office (USPTO) published the Application on February 5, 2019. No opposition was made to the Application.

32.     A United States trademark registration for the mark "Working Films" in standard character form (Reg. No. 5731102) (the "Registration") was issued on April 23, 2019. The Registration is in International Class 36 for "Providing grants for film and video production" and International Class 41 for "Planning, management, and coordination of film and video screenings; consulting, strategic planning, workshops, and educational training in the field of film and video production; providing a website featuring information on the production and use of non-fiction films, and non-downloadable publications in the nature of blogs, and articles involving social justice and environmental protection." A copy of the Registration is attached as Exhibit A.

33.     The Registration shows that Plaintiff 's first use in commerce of the Mark was September 14, 2000.

34.     The Registration is valid and subsisting and constitutes prima facie evidence of Plaintiff's ownership of the Mark, the validity of the Mark, and of Plaintiff's exclusive rights to use the Mark in commerce on and in connection with the services recited in the Registration.

35.     In addition to the trademark registration, Plaintiff owns valid and protectable common law rights for the Mark. Since at least 2000, Plaintiff has used the Mark continuously in commerce to promote, distinguish and identify its services. As a result of this long-standing and continuous use, consumers have come to associate the Mark with Working Films and the services it provides.

36.     Working Films uses the Mark on all communications, including letterhead, emails, grant applications, invoices, etc.

37.     Working Films uses the Mark on all promotional materials and in connection with the promotion and distribution of all of its services.

38.     Working Films uses the Mark on its website at www.workingfilms.org, as its domain name, and on all of its social media sites, including Instagram, Twitter and Facebook.

39.     Through Working Films' long and continuous use, and substantial investment and time in promoting its services using the Mark, the Mark has come

to be known, recognized and identified as originating and affiliated with Working Films.

40. Working Films has acquired substantial goodwill in the Mark. As a result, it has become a valuable and irreplaceable asset of Working Films.

Compl., DE 1. Exhibits 28 through 45 consist of six applications for trademark registration filed by Plaintiff in October 2015, the USPTO's "office actions" in response to the applications, and notices of abandonment of the applications issued by the USPTO. These documents are not integral to Plaintiff's allegations concerning its 2018 application, 2019 registration, and Plaintiff's use of its Mark in its business dealings. Accordingly, the court will not consider these documents in analyzing Defendant's Rule 12(c) arguments.

### 2. Plaintiff's Statements in its Reply to Counterclaims

Defendant contends that the court may consider admissions made by the Plaintiff in its reply to the counterclaims. A reply, or answer, to a counterclaim is a "pleading." Fed. R. Civ. P. 7(a)(3). The court finds that, just as it may consider relevant admissions in Defendant's answer, it may consider any relevant admissions Plaintiff made in its reply to counterclaims for a Rule 12(c) analysis. *See Jones*, 835 F. Supp. 2d at 95 (a Rule 12(c) motion "will result in claims being dismissed where the material facts are not in dispute and a judgment on the merits can be rendered by looking at the *substance of the pleadings* and any judicially noted facts") (emphasis added) (citation and internal quotation marks omitted); *see also Ramos v. CMI Transportation, LLC*, No. 3:18-CV-968 JD, 2019 WL 3244612, at *1 (N.D. Ind. July 19, 2019) ("In evaluating [a Rule 12(c) motion, the Court considers the allegations in the complaint and any admissions in the answer." (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)).

### 3. Do the Pleadings Support Dismissal Based on Laches?

The court finds the Defendant has failed to demonstrate as a matter of law that Plaintiff

unreasonably delayed filing its Lanham Act claims. The allegations in the Complaint do not reveal when Plaintiff first became aware of Defendant's use of "Working Narratives," but Defendant contends that Plaintiff's admissions in its reply to the counterclaims demonstrate Plaintiff knew of "Working Narratives" in at least 2014. In its Reply to Defendant's Counterclaims (DE 22), Plaintiff "admitted that Molly Murphy and Anna Lee with Working Films met with Nick Szuberla on February 13, 2014" (*id.* at ¶ 131) and "admitted that Molly Murphy, Anna Lee, Nick Szuberla, Rend Smith, and Paul VanDeCarr met on May 8, 2014" (*id.* at ¶ 133). Plaintiff contends that despite when it became aware of the use of "Working Narratives," its allegations regarding Defendant's changing conduct support a theory of "progressive encroachment," which thwarts the defense of laches.

The Fourth Circuit instructs that "courts may apply the doctrine of estoppel by laches to deny relief to a plaintiff who, though having *knowledge of an infringement*, has, to the detriment of the defendant, unreasonably delayed in seeking redress." *What-A-Burger of Va., Inc.*, 357 F.3d at 448 (quoting *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996)) (emphasis added). Through its argument, Defendant attempts to persuade the court that Plaintiff's knowledge of the *existence* of "Working Narratives" is sufficient to show Plaintiff's knowledge of an *infringement* in Defendant's use of "Working Narratives." But, demonstrating mere knowledge of the use of a trademark is insufficient to invoke the laches doctrine. "[T]o the extent that a plaintiff's prior knowledge may give rise to the defense of estoppel by laches, such knowledge must be of a pre-existing, *infringing* use of a mark." *Id.* at 449 (quoting *Sara Lee*, 81 F.3d at 462) (emphasis in original); *see also Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990) (explaining that, in determining whether laches applies, a court should ordinarily consider "whether the owner of the mark knew of the infringing use"). Thus, "a court's consideration of

17

laches in the trademark context should encompass at least these questions: '(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay.'" *What-A-Burger*, 357 F.3d at 448-49 (quoting *Brittingham*, 914 F.2d at 456).

With respect to the first question, the Fourth Circuit explains that "[m]ere use of a mark that is similar or even identical to a registered trademark does not *a fortiori* establish infringement. The 'keystone of infringement' is 'the likelihood of confusion.'" *Id.* at 450 (quoting *Sara Lee*, 81 F.3d at 462; *see also* 15 U.S.C.A. § 1114(1)(a) and (b) (infringement of a registered mark requires use that "is likely to cause confusion, or to cause mistake, or to deceive"). The *What-A-Burger* court suggests that "a court should consider a number of factors relating to the way in which the competing marks operate in the workplace" and asserts that "similarity of [ ] conflicting names is but one of many factors relevant to a determination of whether the concurrent use of the marks creates a likelihood of confusion." *Id.*

Thus, to succeed on its motion, Defendant must demonstrate that the pleadings reflect Plaintiff unreasonably delayed filing its Lanham Act claims after learning (or having knowledge) that Defendant's use of "Working Narratives" would likely cause confusion in the marketplace. Because the Complaint is silent with respect to *when* Plaintiff had knowledge of Defendant's alleged infringement, Defendant relies on its documents proffered in support of its Counterclaims;[5] however, the court has determined that the only documents it may consider in this analysis relate to Defendant's LLC filings and the parties' communications after Plaintiff's 2018 cease and desist letter, none of which are relevant to the first question in a laches analysis. Defendant also relies

---

[5] The court may also consider any admissions or other information Defendant provides in the Answer, but the court finds nothing relevant to this issue contained in the Answer.

on Plaintiff's admissions in its Reply to Counterclaims, which may be relevant, but they reflect only that Plaintiff's representatives met with Defendant's representatives in 2014 and, as such, they do not rebut Plaintiff's allegations that Defendant's use of "Working Narratives" was "initially sporadic and inconsistent," with Defendant "using several marks to promote its services" including, for example, the use of "Nation Inside" as Defendant's name; that Defendant's services using "Working Narratives" "initially did not overlap in a substantial way with those of Plaintiff," but Defendant's use "has materially changed"; and that Defendant is "now consistently" using "Working Narratives" to "provide services that are substantially similar to those provided by Plaintiff." Compl. at ¶¶ 48-51.

Defendant contends that while Plaintiff argues its allegations demonstrate "progressive encroachment"—which describes a "fact pattern, wherein the defendant . . . 'either gradually edges closer and closer in trademark similarity or product line operations or else escalates its volume or scale of operations so as to create a higher profile'" (*What-A-Burger*, 357 F.3d at 451 (quoting 5 McCarthy at § 31:18))—Plaintiff fails to plead facts supporting such theory in the Complaint. The court need not address Defendant's contention because, even if Defendant is correct, the Fourth Circuit determined that the allegations in *What-A-Burger* did not "present a 'progressive encroachment' fact pattern" and concluded, "The principles underlying our decision in *Sara Lee*, however, are controlling here: (1) delay is measured from the time at which the owner knew of an infringing use sufficient to require legal action; and (2) legal action is not required until there is a real likelihood of confusion." *Id.*; *see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 301 (4th Cir. 2012).

Here, the court finds Defendant has failed to demonstrate on the pleadings that laches applies to bar Plaintiff's Lanham Act claims; while it is possible that Defendant has evidence

19

sufficient to assist the court in determining at what point Defendant's use of "Working Narratives" may have created a sufficient likelihood of confusion to trigger the Plaintiff's obligation to sue, such evidence may not be considered for a Rule 12(c) analysis.

4. Do the Pleadings Support Dismissal Based on Acquiescence?

Citing the parties' 2018 and 2019 communications described above, Defendant argues that Plaintiff "acquiesced" in Defendant's use of "Working Narratives." Specifically, Defendant asserts that after Plaintiff initially demanded that Defendant cease and desist its use of "Working Narratives" in early 2018, Defendant did not hear again from the Plaintiff until May 2019; during the delay, Defendant "relied on Plaintiff's silence as an acceptance that its allegations were improper or that it accepted that the statute of limitations had passed." Mot. at 6-7.

"Acquiescence is the active counterpart to laches . . . [b]oth doctrines 'connote consent by the owner to an infringing use of his mark,' but 'acquiescence implies *active* consent.'" *What-A-Burger*, 357 F.3d at 452 (quoting *Sara Lee*, 81 F.3d at 462) (emphasis in original). The doctrine is encompassed within 15 U.S.C.A. § 1115(b)(9) and provides that "[a]n infringement action may be barred . . . where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement." *Id.* "As with laches, acquiescence assumes a 'preexisting infringement' that 'requires that the trademark owner knowingly consent—albeit actively—to the defendant's infringing use of the mark.'" *Id.*

Defendant neither cites case law nor explains how Plaintiff's inaction between February 2018 and May 2019 supports a finding that Plaintiff conveyed to Defendant "through affirmative word or deed" its consent to Defendant's use of "Working Narratives." The court finds Defendant fails to demonstrate the application of acquiescence to bar Plaintiff's Lanham Act claims, and Defendant's motion seeking dismissal of Plaintiff's first and second claims is denied.

B.    State Law Claims

Plaintiff's third and fourth claims seek recovery pursuant to North Carolina's statutory and common law; the court has determined for purposes of Defendant's motion that these claims are subject to the four-year statute of limitations found in the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75–16.2 ("UDTPA"). Thus, Plaintiff's claims must have accrued on or after July 29, 2016.

A claim under the UDTPA accrues when the alleged violation occurs. *Faircloth v. Nat'l Home Loan Corp.*, 313 F. Supp. 2d 544, 553 (M.D.N.C. 2003), *aff'd sub nom. Faircloth v. Fin. Asset Sec. Corp. Mego Mortg. Homeowner Loan Tr.*, 87 F. App'x 314 (4th Cir. 2004) (citations omitted). In other words, the claim accrues "when a plaintiff has the 'right to institute and maintain suit . . . .'" *Id.* (quoting *Barbee v. Atl. Marine Sales & Serv., Inc.*, 115 N.C. App. 641, 649, 446 S.E.2d 117, 122 (1994). The parties do not cite, and the court has not found, any cases involving allegations of trademark infringement and violations of the UDTPA, in which the court opines as to the circumstances under which a UDTPA claim accrues.[6] For the instant claim, Plaintiff alleges Defendant "is using a mark that creates a likelihood of confusion, mistake or deception," "with knowledge of Plaintiff's ownership and exclusive rights," and "without Plaintiff's authorization or consent." Compl. ¶¶ 100-102. For purposes of this analysis, the court construes Plaintiff's allegations (and those supporting the common law trademark infringement claim) as similar to claims for fraud or misrepresentation, particularly given the Plaintiff's reference to deception. In North Carolina, when a UDTPA claim is based on fraud, "the violation occurs—and the limitations clock starts running—"at the time that the fraud is discovered or should have been discovered with

---

[6] For example, in the insurance context, "a UDTP cause of action accrues when the insurer denies the claim." *Quillen v. Allstate Corp.*, No. 1:14-CV-00015-MR-DLH, 2014 WL 6604897, at *4 (W.D.N.C. Nov. 20, 2014).

the exercise of reasonable diligence." *Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016) (citations omitted); *see also Spoor v. Barth*, 244 N.C. App. 670, 679, 781 S.E.2d 627, 633 (2016); *Sebastian v. Davol, Inc.*, No. 517CV00006RLVDSC, 2017 WL 3325744, at *7 (W.D.N.C. Aug. 3, 2017) (same for both fraud and misrepresentation claims).

Like the defense of laches, to succeed on a statute-of-limitations defense at this stage, all facts necessary to show the time bar must clearly appear "on the face of the complaint." *Dickinson v. Univ. of N. Carolina*, 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015); *see also Ferro v. Volvo Penta of the Americas, LLC*, 731 F. App'x 208, 210 (4th Cir. 2018) (quoting *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) ("Where a defendant seeks dismissal on statute of limitations grounds, the court may dismiss under Rule 12(b)(6) 'only if the time bar is apparent on the face of the complaint.")).

No party disputes that Plaintiff's common law trademark infringement and UDTPA claims are based on the same factual allegations as the Lanham Act claims. Defendant expresses the same arguments for dismissal of the state law claims as it does for the federal claims. The court finds that Defendant has failed to demonstrate on the pleadings that Plaintiff discovered or should have discovered prior to July 29, 2016 that Defendant's use of "Working Narratives" created a likelihood of confusion, mistake, or deception. Again, the court recognizes the possibility that Defendant may possess evidence to support its arguments in this respect, but the court is limited in what it may consider for a Rule 12(c) analysis. Defendant's motion seeking dismissal of the Plaintiff's third and fourth claims for relief is denied.

**V.     Conclusion**

A Rule 12(c) motion "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Massey*, 759 F.3d at 353 (quoting *Drager*

22

*v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014)). The Complaint in this case is silent with respect to when Plaintiff knew or should have discovered that Defendant's use of "Working Narratives" would likely cause confusion, and Defendant's reliance on its proffered exhibits and Plaintiff's admissions do not persuade the court that the doctrines of laches and acquiescence or the applicable statute of limitations apply to bar the Plaintiff's claims. Accordingly, Defendant's Motion for Judgment on the Pleadings [DE 15] is DENIED.

SO ORDERED this __25th__ day of March, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE